## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHRISTINA SANTILLANES,

     Plaintiff,

vs.                                    CIV No. 23-0064 MV/KK

MARTIN O'MALLEY, Commissioner
of the Social Security Administration,[1]

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[2]

THIS MATTER is before the Court on Plaintiff Christina Santillanes's Opposed Motion to Reverse or Remand (Doc. 19) ("Motion"), filed June 21, 2023, in which she appeals the denial of her claim for supplemental security income and asks the Court to remand this matter to the Social Security Administration for further proceedings. The Commissioner filed a response to the Motion and Plaintiff filed a reply. (Docs. 25, 26.) Having meticulously reviewed the entire record and the relevant law, I find that one of the three grounds asserted in Plaintiff's Motion is well taken. I therefore recommend that the Court GRANT Plaintiff's Motion on that ground, reverse the Commissioner's decision denying benefits, and remand this matter to the Commissioner for further proceedings.

---

[1] Mr. O'Malley has been automatically substituted for his predecessor Kilolo Kijakazi as the Defendant in this suit. Fed. R. Civ. P. 25(d).

[2] By an Order of Reference (Doc. 10) entered on January 31, 2023, United States District Judge Martha Vázquez referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

## I.  Factual and Procedural History

Plaintiff, now aged forty-seven (47), alleges she became disabled on June 3, 2016, due to degenerative joint disease in knees, hip, back and hands, bursitis, post-traumatic stress disorder ("PTSD"), depression, anxiety, osteoarthritis, tennis elbow, borderline diabetes, insomnia, and iron deficiency. (AR[3] 225, 233, 239, 252.) Plaintiff did not graduate from high school and in the fifteen years before her alleged disability onset, she worked only one job as a fast-food cook for a period of ten months. (AR 253-54.)

On August 26, 2019, Plaintiff filed an initial application for supplemental security income. (*See* AR 22, 210–240.) Plaintiff's application was denied at the initial level in March 2020 (AR 105), and at the reconsideration level in July 2021 (AR 114). Plaintiff requested a hearing (AR 119), which Administrative Law Judge ("ALJ") Kathryn Bridges conducted on May 4, 2022. (AR 38–56). Plaintiff appeared with John Bishop, a non-attorney representative, and testified at the hearing, as did vocational expert Corinne Porter (the "VE"). (*Id*.)

On May 20, 2022, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (AR 22–32.) Plaintiff requested that the Appeals Council review the ALJ's Decision (AR 207–209), and on November 25, 2022, the Council denied the request for review (AR 1–6), which made the ALJ's Decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On June 21, 2023, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision (the "Decision"). (Doc. 1.)

---

[3] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on March 23, 2023. (Doc. 13.)

## II. The ALJ's Determination

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process.[4] (AR 22–32.) First, ALJ Bridges found that Plaintiff had not engaged in substantial gainful activity since the application date of August 26, 2019. (AR 24.) The ALJ found at step two that Plaintiff suffered from the severe impairments of "obesity, degenerative joint disease bilateral knees and bilateral hips, depression, anxiety, and" PTSD. (*Id.*; *see* 20 C.F.R. § 416.920(c).) Additionally, the ALJ found that those "medically determinable impairments significantly limit the ability to perform basic work activities as required by [Social Security Ruling ("SSR")] 85-28." (AR 24.) While she noted that Plaintiff "has been treated for reported back and hand pain," she found that "pain is a symptom and is not considered a stand[]alone impairment." (*Id.*) She further found, based on x-ray and magnetic resonance imaging (MRI) studies of Plaintiff's back, that "[t]he objective findings in the record do not support a back impairment." (*Id.*) Finally, she found that the record did not support finding a medically determinable impairment of Plaintiff's hands. (AR 24–25.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of listed impairments under 20 C.F.R.

---

[4] The five-step sequential evaluation process requires the ALJ to determine whether:

(1) the claimant engaged in substantial gainful activity during the alleged period of disability;
(2) the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
(3) any such impairment meets or equals the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4) the claimant can return to her past relevant work; and, if not,
(5) the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Part 404, Subpart P, Appendix 1. (AR 25; *see* 20 C.F.R. 416.920(d), 416.925, and 416.926.) When assessing whether Plaintiff's mental impairments met the Paragraph B criteria for Listings 12.04, 12.06, and 12.15, the ALJ found that Plaintiff has mild limitations in concentrating, persisting or maintaining pace and in adapting or managing herself; and moderate limitations in understanding, remembering, or applying information and in interacting with others. (AR 25-26.)

At step four,[5] the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative findings, and Plaintiff's reports of her symptoms. (AR 27–30.) She found that the record did not support Plaintiff's statements about the intensity, severity and limiting effects of her symptoms. (AR 29.) The ALJ concluded that Plaintiff possessed the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; frequently finger bilaterally; can understand, remember, and carry out simple instructions; with occasional interaction with the public.

(AR 27.) Based on this RFC, the ALJ found that Plaintiff was not capable of performing her past relevant work as a fast-food cook. (AR 30–31.)

However, at step five, the ALJ found that an individual of Plaintiff's age and with her education, work experience, and assessed RFC could perform other jobs existing in significant numbers in the national economy. (AR 31.) Specifically, the ALJ determined that an individual with Plaintiff's characteristics could perform the requirements of the representative occupations of cleaner (323.687-014), marking clerk (209.587-034), and routing clerk (222.687-022). (AR 31–

---

[5] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given her RFC. *Id.* A claimant who can perform her past relevant work is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

32, 53–54.) The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 26, 2019, the date the application was filed." (AR 32.)

### III.  Standard of Review

A federal court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, a court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, courts do not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Courts will not disturb the agency's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). A federal court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate

that the ALJ considered all of the evidence," and, "in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

The Court's consideration is limited to arguments "adequately briefed for . . . review." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). In addition, where the Court "can follow the adjudicator's reasoning" and can "determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Id.* at 1166.

## **IV. Legal Standards**

Although an ALJ must consider all the evidence in the record, certain "articulation requirements" apply when an ALJ evaluates a "medical opinion." *See* 20 C.F.R. § 416.920c(b). A medical opinion, as defined by the relevant regulation, is "a statement from a medical source about what [claimants] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in [enumerated] abilities." *Id.* § 416.913(a)(2). Among the enumerated abilities are the ability "to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 416.913(a)(2)(i). ALJs must "articulate in [their] determination[s] or decision[s] how persuasive [they find] all of the medical opinions" of record. *Id.* § 416.920c(b). However, "when a medical source provides multiple medical opinion(s)," ALJs need not articulate how they considered each individual medical opinion; rather, they must "articulate how [they] considered

the medical opinion(s) . . . from that medical source together in a single analysis." *Id.* § 416.920c(b)(1). While ALJs must consider five factors when evaluating medical opinion evidence, *see id.* § 416.920c(c)(1)–(5), they are generally only required to articulate their consideration of two of those factors: supportability and consistency. *Id.* § 416.920(b)(2). And, if differing medical opinions are equally well-supported and consistent with the record, ALJs must then "articulate how [they] considered the other most persuasive factors . . . for those medical opinions." *Id.* § 416.920c(b)(3). Although an ALJ is "not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009–10, the duty to address the persuasive value of all medical opinion evidence of record is mandatory. 20 C.F.R. § 404.1520c(b).

In addition to addressing medical opinions, ALJs must "discuss the . . . significantly probative evidence" they reject. *Clifton,* 79 F.3d at 1009–10. In other words, they may not cherry-pick from the significantly probative medical records to support their findings. *Id.* at 1010; *Haga*, 482 F.3d at 1208. To be significantly probative, the evidence must relate to the claimant's limitations and ability to work, i.e., the claimant's residual functional capacity. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (holding that ALJ erred where he ignored evidence "that would support a finding of disability"); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (holding that ALJ erred by ignoring evidence of a history of physical problems that could cause function-limiting pain). Evidence not probative of that issue is not "significantly probative." *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (holding that evidence was not significantly probative where the claimant did not explain "how that evidence undercut[] the ALJ's conclusion that she could do a full range of sedentary work"); *Qantu v. Barnhart*, 72 F. App'x 807, 811 (10th Cir. 2003) (finding the ALJ did not err by not discussing medical evidence of an impairment where "there [was] no evidence that this condition limited claimant's abilities"); *see Marquez v. Kijakazi*,

No. CV 22-187 GBW, 2023 WL 6370777, at *6 (D.N.M. Sept. 30, 2023) (finding the ALJ did not err by not discussing medical records where the plaintiff failed show that they "would meaningfully change the ALJ's analysis of [the p]laintiff's mental limitations"); *Wright v. Colvin*, No. CIV-15-558-BMJ, 2016 WL 4077244, at *4 (W.D. Okla. July 29, 2016) ("Moreover, without demonstrating how the evidence . . . limits his functional abilities, the evidence lacks significantly probative value."); *see also Korum v. Astrue*, 352 F. App'x 250, 254 (10th Cir. 2009) (finding no error where the "evidence that the ALJ did not mention was not of such quality as to require discussion under *Clifton*"). Moreover, an ALJ does not err by not discussing evidence that does not contradict the ALJ's assessed RFC. *Shiplett v. Astrue*, 456 F. App'x 730, 734 (10th Cir. 2012) (finding the ALJ did not err by not discussing statements in treatment notes that did not "contradict the ALJ's RFC assessment" even though they showed the plaintiff "continued to experience pain").

## V.  Analysis

Plaintiff contends that the ALJ erred in her step-four determination of Plaintiff's RFC by failing to (1) properly consider and discuss the treatment notes by a licensed professional clinical counselor ("LPCC") whom Plaintiff had seen weekly, (2) explain why she rejected a consulting examiner's opinion that Plaintiff's ability to follow simple instructions was mildly limited despite finding his opinion somewhat persuasive, and (3) meaningfully consider and discuss the effect of Plaintiff's obesity on her physical limitations and how obesity limits her treatment options. (Doc. 19 at 16-19.) I find Plaintiff's first argument well-taken and, therefore, recommend granting the Motion on that ground, reversing the Decision, and remanding for further proceedings. I find that her remaining arguments are not well-taken and are not grounds for granting the Motion.

### A.    The ALJ committed reversible error by not considering LPCC Laurenne's treatment notes when assessing the persuasiveness of Dr. Earl's opinions.

Plaintiff argues that the ALJ failed to adequately consider the extensive treatment notes by LPCC Sunny Laurenne, which, Plaintiff alleges, contain significantly probative evidence (1) tending to reinforce her complaints of pain and mental symptoms and (2) demonstrating the persuasiveness of the opinions of Dr. David C. Earl.[6] (Doc. 19 at 16-17; Doc. 26 at 2.) I find that it is not clear from the Decision that ALJ Bridges considered LPCC Laurenne's notes. I further find that, even if she considered the notes, ALJ Bridges did not explain why she rejected them in assessing Dr. Earl's opinions for consistency.

The only reference in the Decision to LPCC Laurenne's treatment notes is a single sentence: "From August 2019 through March 2022 the claimant has undergone monthly mental health treatment for depression, anxiety, and [PTSD]." (Exhibit 6F/14-16, 23, 55, 9F, 10F, 11F)." (AR 29.) Not only is this reference brief, but also it erroneously states that Plaintiff had "monthly" therapy sessions. (*Id*.) In fact, the treatment notes, which include over 120 pages, reflect that Plaintiff saw LPCC Laurenne closer to weekly. (AR 745–868.) Indeed, from even the most cursory review of these records, one can readily discern that the sessions occurred much more frequently than monthly given that (1) for most sessions, each session is recorded on a single page, (2) the period from August 2019 to March 2022, is approximately 31 months, and (3) the notes encompass over 120 pages. (*Id*.) The substantial discrepancy between the ALJ's discussion of the treatment notes and the record therefore calls into question whether she actually reviewed the notes at all. In light of that discrepancy, ALJ Bridges' general statement that she "considered the longitudinal

---

[6] LPCC Laurenne is a "medical source." 20 C.F.R. § 416.902(a)(*i*). However, the requirements for assessment of medical opinions discussed above apply only to evidence that meets the criteria for a medical opinion. *See* 20 C.F.R. § 416.920c(a). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in" work-related abilities. 20 C.F.R. § 416.913(a)(2). Plaintiff does not argue that LPCC Laurenne's treatment notes include a medical opinion.

treatment record" and "the entirety of the evidence submitted" are insufficient to show that she considered the treatment notes. (AR 28); *see Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (rejecting ALJ's use of boilerplate language); *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (when an ALJ states that she has considered the evidence, courts will take the ALJ at her word where the decision supports that statement).

In addition, even if ALJ Bridges considered some or all of the treatment notes, she erred by not explaining why she rejected them when considering the persuasiveness of Dr. Earl's opinions. In the report of his February 22, 2020, examination of Plaintiff, Dr. Earl wrote,

> The severity of [Plaintiff's] anxiety is remarkable on mental status exam and her history supports a high likelihood of generalized anxiety. She also suffers from chronic major depression symptoms. There were no cluster B personality concerns that were evident during my interview. The claimant would likely benefit from continued engagement in individual therapy to help process difficult emotions and develop coping strategies.

(AR 448.) He opined that "[Plaintiff] is likely to experience impairment in the ability to understand and carry out simple and complex instructions, as well as concentrate, related to her current symptoms" and that Plaintiff "is likely to have difficulty persisting at tasks and being a dependable employee given the degree of anxiety and depressive symptoms," and "would likely require supervision at any type of work-related activity given her history." (*Id.*)

In a table labeled "Abilities," Dr. Earl indicated that Plaintiff has "mild" difficulty with understanding and remembering complex and simple instructions, and with completing instructions, concentrating, and persisting at tasks. (AR 448.) However, he indicated that she has "mild to moderate" difficulty with working without supervision, "moderate" difficulty with interacting with peers at work and adapting to changes at work, and "moderate to severe" difficulty with interacting with the public and using public transportation. (*Id.* at 448-49.) He noted that Plaintiff's "fund of knowledge" was "adequate for age and level of education," her

"attention/concentration" was "adequate to encounter, no distractibility noted" and that her insight

and judgment were "fair." (*Id*. at 447.) She scored 30/30 on the Mini Mental State Exam, which

suggested "no neurocognitive impairment." (*Id*.)

> In the Decision, ALJ Bridges discussed the results of Dr. Earl's exam as follows:
>
> On examination, [Plaintiff] maintained appropriate eye contact and was cooperative and pleasant, but she demonstrated moderate psychomotor agitation in her legs and upper extremities and she reported her mood as "really nervous." Her affect was congruent, anxious, with a restricted range. Her though[t] process was linear and speech was spontaneous and normal rate. There was no evidence of delusion ideation or perceptual disturbance. Her attention and concentration were adequate to the encounter, with no distractibility note[d], and recent and remote memory were grossly intact. Her fund of knowledge was adequate, insight and judgment were fair. She was diagnosed with generalized anxiety, major depressive disorder, and posttraumatic stress disorder.

(AR 29 (citations omitted).) However, she did not acknowledge that Dr. Earl found the "severity

of [Plaintiff's] anxiety [to be] remarkable on mental status exam[.]" (*Id*.; AR 448.)

ALJ Bridges also noted that Dr. Earl "found [Plaintiff] would have moderate to severe

limitations interacting with the public, moderate limitations interacting with peers, mild to

moderate limitations working without supervision, moderate limitations [] adapting to changes at

work, and moderate to severe limitations using public transportation." (AR 30.) She found Dr.

Earl's opinion "somewhat persuasive" but that "the more severe limitations in social interaction

are less persuasive as they are not supported by the evidence in the record and are not consistent

[with Plaintiff's] reports of her abilities." (*Id.*)

The RFC found by ALJ Bridges is inconsistent with Dr. Earl's opinions on Plaintiff's

limitations related to adapting to change, interacting with co-workers, and being a dependable

employee. In adopting an RFC that does not account for these limitations, ALJ Bridges was

required to discuss the significantly probative evidence bearing on the persuasiveness of those

opinions, including LPCC Laurenne's treatment notes. *Clifton,* 79 F.3d at 1009–10. LPCC

Laurenne observed that Plaintiff has "social anxiety," "comes from an emotional base, . . . is easily offended," "is easily triggered by others' critical, judgmental, or careless attitude," and is "easily triggered by anyone in authority, who seems to be treating her unfairly. Much of this has to do with her PTSD symptoms resulting from past abuse[.]" (AR 787, 789, 799, 810.) She noted that Plaintiff "becomes anxious when things get changed" (AR 792) and that Plaintiff's PTSD symptoms are triggered when around people, particularly men. (AR 784, 845, 860 ("PTSD symptoms were triggered at Walmart"), 823 ("still experiences PTSD symptoms").)[7] These observations are supportive of Dr. Earl's opinions of Plaintiff's ability to work with colleagues and supervisors and adapt to change at work. Finally, LPCC Laurenne observed that Plaintiff's mental health problems made it difficult for her to "fulfill[] even the lowest recommended [appointments] or classes" to receive benefits from the Temporary Assistance for Needy Families program. (AR 789.) This evidence supports Dr. Earl's opinion that Plaintiff is "likely to have difficulty . . . being a dependable employee given the degree of anxiety and depressive symptoms." (AR 448); *cf. Winfrey*, 92 F.3d at 1025–1026 ("A finding that a claimant is able to engage in substantial gainful activity . . . requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." (emphasis in original) (citation omitted)).

Furthermore, ALJ Bridges found that Plaintiff's medical records "indicate her [anxiety and depression] symptoms were managed well with her current medication dosage." (AR 29.) In support, ALJ Bridges cited two notes by a physician assistant in December 2020 and March 2021 that Plaintiff reported that her "anxiety was better" and she was "doing well" on medications for anxiety and depression. (*Id.* (citing AR 476, 486).) However, LPCC Laurenne noted Plaintiff's

---

[7] *See also* (AR 763 ("Client has been overwhelmed by anxiety"); 772 ("Client is trying her best not to break down but is extremely anxious"); 773 ("Client tends to feel victimized when things don't work out for her. She tends to take it personally when there is a delay or mistake.").

anxiety and depression in July, August, and November 2021, as well as PTSD symptoms in September 2021 and February through March 2022. (AR 817 (noting poor judgment on mental status and observing "childish" reaction in interactions with 7-year-old grandchild), 828 ("anxiety has increased . . . fighting off depression"), 826 ("the anxiety and depression have increased"), 818 ("pressured speech . . . anxiety was high again"), 823 ("still experiences PTSD symptoms"), 820 (noting in clinical observation that Plaintiff's "life seemed continually filled with . . . major problems, crises, or upsets of one kind or another . . . in every domain of her life" including in her "mental health"), 857-858 (noting severe childhood traumas and PTSD triggered on a regular basis, intense fear, recurring  and bad dreams); 859 (noting terrible dream about past childhood trauma); 860 ("PTSD symptoms were triggered at Walmart"); 865 (noting that Plaintiff's "past childhood history has greatly impacted her adult life causing PTSD, depression, anxiety in general and social anxiety"), 866 (noting "current PTSD [and] chronic anxiety symptoms")).  Having made a finding based on specific evidence that Plaintiff's symptoms were well controlled by March 2021, ALJ Bridges was required to discuss the more recent evidence in LPCC Laurenne's notes showing that Plaintiff's symptoms continued into 2022 and were chronic. *See Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished) (discussing the relative significance of recent medical records compared to older ones).

For all of these reasons, I find that ALJ Bridges erred by not discussing LPCC Laurenne's notes related to Plaintiff's anxiety, depression, and PTSD. Without that discussion, the Decision leaves the Court unable to determine whether she properly rejected that evidence in considering the persuasiveness of Dr. Earl's opinions, which is a ground for reversal. *Winfrey*, 92 F.3d at 1019 (stating that the Commissioner's "failure to apply the correct legal standards, or to show us that she has done so, are . . . grounds for reversal"). Moreover, this failure is not harmless. The Tenth

Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Thus, an ALJ's error is harmless only if the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (stating that where an ALJ fails to discuss competent evidence, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination").

Here, a reasonable ALJ crediting LPCC Laurenne's notes could have found that Dr. Earl's opinions were consistent with other medical evidence in the record and, consequently, could have included related limitations in the RFC. Dr. Earl opined that Plaintiff has moderate limitations in at least three abilities needed for any job: the ability to respond appropriately to coworkers and supervisors, to adapt to changes at work, and to be a dependable employee. POMS DI 25020.010.b.2. In addition, the VE testified that, for the three jobs she identified based on the RFC, employers tolerate absences up to two days per month for an employee who is "always working at a competitive rate without any issues of being off task . . . ." (AR 54–55.) This testimony suggests that the limitations to which Dr. Earl opined, had they been included in the RFC, would eliminate any jobs existing in significant numbers in the national economy that Plaintiff could perform. A reasonable ALJ, therefore, could have determined that Plaintiff is disabled. Hence, I find that ALJ Bridges' failure to explain why she rejected LPCC Laurenne's treatment notes related to Plaintiff's mental impairments is not harmless and recommend that the Court grant the Motion on this ground.

On the other hand, I am not persuaded that ALJ Bridges erred by not discussing LPCC Laurenne's notes related to Plaintiff's hip and knee pain and therefore recommend denying the

Motion as to that ground. First, Plaintiff has not shown that LPCC Laurenne's treatment notes about her complaints of hip and knee pain are inconsistent with the RFC limiting Plaintiff to light work. (*See* AR 27.) An ALJ does not have to discuss evidence that is consistent with the RFC. *Shiplett*, 456 F. App'x at 734.

Second, Plaintiff does not cite, and careful review did not reveal, that LPCC Laurenne made independent observations of the degree of Plaintiff's pain or opined on the impact of pain on Plaintiff's functional abilities. (AR 745–868.) Rather, her notes document Plaintiff's *reports* of chronic pain. (*See, e.g.*, AR 816, 821, 835, 841, 846, 855, 860, 861.) The treatment notes are therefore cumulative of Plaintiff's testimony that she has chronic pain. *See Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (stating that the claimant's husband's letter was cumulative of the claimant's testimony about her pain). After detailing the objective medical records and the treatments Plaintiff had received, as well as those she had not pursued, ALJ Bridges found Plaintiff's allegations of total disability due to pain were not credible. (AR 28–29.) Plaintiff does not argue that the ALJ's reasons for discounting her credibility were unsupported by substantial evidence or legal error. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (stating that credibility determinations are within the purview of the finder of fact and will not be disturbed when they are supported by substantial evidence). I therefore find "any error in failing to [more fully address the treatment notes] is harmless because 'the same evidence that the ALJ referred to in discrediting [Plaintiff's] claims also discredits" Plaintiff's complaints of disabling pain to LPCC Laurenne. *Best-Willie*, 514 F. App'x at 736 (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir.2011)). Accordingly, remand is not warranted on this ground.

**B.**    **The ALJ did not commit reversible error in her assessment of Dr. Earl's opinion regarding Plaintiff's limitations related to understanding and carrying out simple instructions.**

Next, Plaintiff argues that reversal is warranted because ALJ Bridges failed to explain why she rejected Dr. Earl's opinion that Plaintiff "is likely to experience impairment in the ability to understand and carry out simple and complex instructions," despite finding Dr. Earl's opinion "somewhat persuasive." (Doc. 19 at 17–18; AR 30.) I find that, in fact, the RFC is consistent with Dr. Earl's opinion in this regard. Hence, any articulation error by ALJ Bridges is harmless.

Plaintiff does not dispute that Dr. Earl found she has a "mild" limitation in her ability to understand and carry out simple instructions. (Doc. 26 at 5–6.) Instead, she argues that a mild limitation is more than no limitation and that the RFC's limitation to simple instructions does not reflect Dr. Earl's opinion. (*Id*.) I disagree. The "ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished) (same). In doing so, "an ALJ is permitted, and indeed required, to rely on *all* of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013); *See* SSR 96–8p, 1996 WL 374184, at *5. Because the ALJ is charged with determining the RFC after review of the whole record, there "is no requirement . . . for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Here, ALJ Bridges carried out her duty to determine the impact of Plaintiff's mild limitation in understanding and carrying out simple instructions on the RFC considering all the evidence, *Wells*, 727 F.3d at 1071, including Plaintiff's testimony, her function report, and the opinions of the state agency psychological consultants, both of whom opined that Plaintiff could understand and carry out both simple *and* detailed instructions without limitation. (AR 84, 85, 95–

96.) The state agency psychological consultant at the initial review level found that Dr. Earl's opinions were only partially supported by his mental status examination and only partially consistent with the "overall objective medical evidence." (AR 81.) In contrast to Dr. Earl, she found that Plaintiff's ability to understand and remember "very short and simple instructions" is "not significantly limited" and opined that she "can understand, remember and carry out detailed but not complex instructions[.]" (AR 84, 85.) Similarly, at the reconsideration level, the state agency psychological consultant found that Plaintiff has no understanding or memory limitations and "no significant limitations" in her ability to carry out "very short and simple instructions" or even "detailed instructions." (AR 95–96.) She opined that Plaintiff can "carry out simple through detailed instructions[] but would have difficulty carrying out complex instructions." (*Id*. at 96.)

ALJ Bridges found "these opinions somewhat persuasive, but [also found] the limitations outlined in the residual functional capacity assessment are more supported by the evidence in the record, while the state agency opinions are not supported by the evidence and are not consistent with the claimant's own self reports of her abilities[.]" (AR 30.) Put another way, after considering the evidence bearing on Plaintiff's ability to understand and carry out instructions, such as Plaintiff's function report, ALJ Bridges rejected the state agency consultants' opinion that Plaintiff can carry out detailed instructions in favor of Dr. Earl's opinion and the more restrictive limitation to simple instructions in the RFC. (*Id*.) Such assessment of the evidence is well within ALJ Bridges' purview, and the Court is able to follow the ALJ's reasoning as it related to this portion of Dr. Earl's opinion. I therefore recommend the Court deny the Motion as to this ground.

### C.     The ALJ did not commit reversible error in considering Plaintiff's obesity.

Finally, Plaintiff argues in her Motion that ALJ Bridges erred by not discussing the impact of Plaintiff's obesity on her other impairments. (Doc. 19 at 18-19.) Under Social Security Ruling 19-2p, the ALJ "must consider the limiting effects of obesity when assessing a person's RFC . . . .

As with any other impairment, [ALJs] will explain how [they] reached [their] conclusion on whether obesity causes any limitations." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). Obesity must be considered because, among other things, it "increases stress on weight-bearing joints and may contribute to limitation of the range of motion" and "someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone." *Id*. ALJs must consider obesity at steps two, three, and four of the sequential evaluation, "evaluate each case based on the information in the case record" and avoid "assumptions about the severity or functional effects of obesity combined with other impairment(s)[.]" *Id.* at *2, 4, 6. However, when discussing the evidence supporting the RFC, an ALJ is not "required to note the *absence* of any evidence that . . . obesity resulted in additional functional limitations or exacerbated any other impairment[.]" *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (emphasis added); *Munoz v. Kijakazi*, No. CV 20-245 GJF, 2021 WL 4290176, at *9 (D.N.M. Sept. 21, 2021) ("[W]hile the ALJ is required to *consider* these possible effects of obesity, the ALJ is not required to explicitly *discuss* every possible connection, or lack thereof, between obesity and each 'functional limitation' or 'other impairment.'" (emphasis in original) (quoting *Smith*, 625 F. App'x at 899)).

        In her Motion, Plaintiff argues that the ALJ "ignored an opinion from Plaintiff's treating physician that her obesity affects her knees to the extent she may require bariatric surgery and a knee replacement." (Doc. 19 at 19.) Plaintiff points to a certified nurse practitioner's treatment note stating that she "discussed weight loss and bariatric surgery to help improve [Plaintiff's] knee pain and progression of her arthritis" and that she had been referred for bariatric surgery but did

not call to make an appointment.[8] (Doc. 26 at 7; AR 696.) The certified nurse practitioner also noted that Plaintiff had used an "assistive device" but that it had not alleviated her knee pain. (*Id.*) Plaintiff argues the ALJ should have discussed this evidence because it shows that her obesity contributes to her knee pain and alleged difficulty walking. (Doc. 26 at 7.)

I discern no error. First, the Decision reflects that ALJ Bridges considered the effect of obesity on Plaintiff's functional limitations. She found at step two that Plaintiff's obesity was a severe impairment and at step three she noted, "Pursuant to SSR 19-2p, obesity is no longer a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, however [Plaintiff]'s obesity was considered in relation to and combination with [her] other medical impairments, as required by the Ruling." (AR 25.) In her discussion of Plaintiff's physical impairments at step four, ALJ Bridges again noted Plaintiff's obesity and its impact on her treatment options, stating that Plaintiff's "body mass index as of March 2022 was 43.71, which is in the obese category for adults, and therefore her doctor found she did not qualify for knee replacement surgery[.]" (*Id.* at 29.) She also noted that Plaintiff used a cane during one medical visit. (*Id.* at 28.) Moreover, she found persuasive the state agency consultants' opinions of Plaintiff's physical functional capacity, which opined about her ability to work while noting her obesity. (*Id.* at 29, 83, 95.) *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 759 (10th Cir. 2019) (holding the ALJ did not fail to consider the plaintiff's obesity where the ALJ afforded "great weight" to the opinions of doctors who noted the plaintiff's obesity in forming those opinions).

Second, to show that an ALJ erred in assessment of obesity, a claimant must "point[] to . . . medical evidence indicating that her obesity resulted in functional limitations." *Rose v.*

---

[8] Plaintiff also references an opinion by Steven Ogas, M.D., but the record does not include any notes or opinions by Dr. Ogas. (*See* Doc. 19 at 19.)

*Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (rejecting plaintiff's argument that the ALJ failed to consider the effects of obesity because the plaintiff did not point to evidence of such effects). Plaintiff has not met that burden because she did not cite any evidence that her obesity caused functional limitations greater than those reflected in the RFC, which was limited to light work. (AR 27.) *See Smith*, 625 F. App'x at 899 (claimant failed to show "that her obesity alone, or in combination with other impairments, resulted in any further limitations"); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (no error in part because the plaintiff did not "cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work").

Contrary to Plaintiff's assertion, this case is not like a recent decision in *Aragon v. Berryhill*. (Doc. 19 at 18 (citing *Aragon v. Berryhill*, No. CV 17-1160 SCY, 2019 WL 1428353 (D.N.M. Mar. 29, 2019)).) In that case, the ALJ discounted an opinion by a treating physician that, "due to Mr. Aragon's morbid obesity and related pain, he would benefit from a scooter or a power mobility device to improve his quality of life and help him ambulate more safely." *Aragon*, 2019 WL 1428353, at *6. The Court held that the ALJ's reasons for discounting that opinion were not supported by the evidence and that the ALJ improperly picked and chose from the record to support the RFC. *Id*. at *7. Critically, however, it also held that Mr. Aragon had "identified evidence in support of his contention that his obesity causes further limitations than the ALJ assessed." *Id*. at *8. Put another way, the *Aragon* plaintiff pointed to evidence in the record that obesity impaired his ability to walk and stand, abilities essential for work, which the RFC did not reflect. *See* § 416.967 (stating that even "sedentary" work requires "a certain amount of walking and standing"). This feature distinguished *Aragon* from *Smith*, *Rose*, and *Arles*. *Aragon*, 2019 WL 1428353, at *8. Here, Plaintiff's evidence that bariatric surgery to address her obesity might also improve her knee pain does not show that obesity, alone or in connection with knee pain, impedes

Plaintiff's ability to stand or walk beyond what is already reflected in the RFC's limitation to light work. Hence, her case is akin to *Smith*, *Rose*, and *Arles*, and distinguishable from *Aragon*. I find that Plaintiff has not shown that ALJ Bridges' consideration or discussion of her obesity warrants reversal.

## VI.  Conclusion

Having thoroughly reviewed the administrative record, I find that the ALJ committed reversible error by failing to adequately consider or explain why she rejected significantly probative evidence in LPCC Laurenne's treatment notes related to Plaintiff's anxiety, depression, and PTSD in evaluating Dr. Earl's opinions. Because she did not explain her assessment of those notes, ALJ Bridges did not provide the Court with "a sufficient basis to determine that appropriate legal principles have been followed" and that substantial evidence supports her decision. *Jensen*, 436 F.3d at 1165. However, I find that that any failure to discuss LPCC Laurenne's treatment notes documenting Plaintiff's assertions of chronic pain was harmless, and that Plaintiff has not shown that ALJ Bridges otherwise erred in her evaluation of Dr. Earl's opinions or the impact of Plaintiff's obesity on the RFC.

Accordingly, I recommend that Plaintiff's Motion to Reverse and Remand (Doc. 19) be GRANTED in part and DENIED in part, that the Commissioner's Decision be REVERSED, and this matter REMANDED to the Commissioner for further proceedings.

**Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico.  A party must file any objections**

within the fourteen-day period allowed if that party wants appellate review of the proposed

findings and recommended disposition.  If no objections are filed, no appellate review will

be allowed.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE